**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**v.**                                    **Case No. 4:22-cr-00009-01-KGB**

**MONTRELL AUSTIN**                                                              **DEFENDANT**

<u>**ORDER**</u>

Pending is defendant Montrell Austin's motion to suppress (Dkt. No. 94). Mr. Austin seeks to suppress all physical and testimonial evidence obtained from law enforcement's search of 8501 Geyer Springs Road, Pulaski County, Arkansas, on or about November 9, 2021 (*Id.*). The United States of America ("Government") responded in opposition to the motion (Dkt. No. 98). The Court conducted a hearing on the motion on June 11, 2025, at which Mr. Austin, his counsel, and counsel for the Government were present. The Court received evidence and testimony and heard argument at the hearing. For the following reasons, the Court denies the motion to suppress (Dkt. No. 94).

**I.      Factual Background**

At the hearing on the motion to suppress, Detective Dalton Schisler ("Detective Schisler") of the Little Rock Police Department ("LRPD") took the stand, was sworn, and testified as follows.

Detective Schisler has been a police officer with LRPD for almost 14 years in total. He has been a narcotics detective for approximately eight years and a Drug Enforcement Administration ("DEA") task force officer for approximately three years. During the time of the investigation that led to the instant case, he was also a field training officer with LRPD who trained new officers when they came to the patrol division or a specialized unit such as narcotics.

Detective Cole Reppond ("Detective Reppond") was the lead detective for LRPD's investigation of Montrell Austin. Detective Schisler was Detective Reppond's supervisor

throughout the investigation of Mr. Austin, and everything Detective Reppond did went through Detective Schisler. They were equally involved in the investigation, and Detective Schisler was physically present for surveillance and helped to prepare the affidavit supporting the search warrant issued for 8501 Geyer Springs Road on November 9, 2021. Detective Schisler was physically present at 8501 Geyer Springs Road when the search warrant was executed.

LRPD began its investigation of Mr. Austin after a certain arrested individual, Frank Enoch, provided information regarding Mr. Austin (Dkt. No. 98-2, ¶ 2). Specifically, Mr. Enoch identified 8501 Geyer Springs Road as the location where he purchased fentanyl from Mr. Austin (*Id.*). Mr. Enoch stated that 8501 Geyer Springs Road was a stock area where Mr. Austin kept firearms and drugs. During the course of the LRPD investigation, law enforcement engaged in surveillance of 8501 Geyer Springs Road approximately 10 to 15 times during both daylight and nighttime hours. The surveillance occurred during a period of two to three weeks.

Each time law enforcement surveilled 8501 Geyer Springs Road, they parked at the curb line in the parking lot of a studio across Geyer Springs Road from the property. Geyer Springs Road is an approximately five-lane roadway. Law enforcement used binoculars when surveilling the property. From law enforcement's vantage point, they could observe anyone coming or leaving from either the north or south side of the building. They did not physically approach the building until the search warrant was executed. They observed an abnormal amount of vehicle traffic at the property at all hours of the day and night entering and leaving the property. The vehicles always parked on the south side of the building—that is, the front side—in a parking lot; law enforcement never observed anybody come and go from the north side.

Law enforcement also engaged in electronic surveillance, including through social media apps such as Facebook and Instagram, through which law enforcement identified several parties

who were coconspirators with Mr. Austin.   Through this social media surveillance, law enforcement also observed firearms and "things of that nature" inside the property.  They observed a television monitor that appeared to be connected and broadcasting footage from security cameras that surrounded the entire property.  In other words, it appeared that occupants inside the building were monitoring through security cameras all that occurred outside of the building.

Law enforcement observed that the building had doors on all sides, with three in the front. There were approximately six doors in total on the exterior of the building.  On the south side of the building, on the ground and propped up against the building, there was a sign for a tax services business (Dkt. No. 98-3).  Although he did not make note of it at the time, Detective Schisler noted during his testimony at the hearing that there was also a small gold slot next to one of the doors on the south side that Detective Schisler testified was consistent with a small sign or placard.  He noted one identifiable mailbox in the middle of the building.  According to Detective Schisler, there was nothing on the exterior of the building that identified or indicated that the building was divided into different suites or units.  Detective Schisler also did not note at the time, but was able to identify later during his testimony from a picture, a "black and white something or another" that could be a sign and a sign in the window that said "no" on the north side of the building.  Based on his observations through surveillance, it did not occur to Detective Schisler at any point in the investigation that 8501 Geyer Springs Road was a residential address or a multi-use building. Based on his training and experience, and based on his observations through surveillance, Detective Schisler believed 8501 Geyer Springs Road to be a stash or trap location for drug dealing.  Detectives Schisler and Reppond believed the building to be a single occupiable structure.

Detective Schisler testified that there was a single active city business license for 8501 Geyer Springs Road for "CoCo's Salon."  He never determined to whom that business license was

issued.  He did not recall if the license provided a name.  Detective Reppond's affidavit in support of the November 9, 2021, search warrant attests that Detective Reppond believed that "CoCo's Salon no longer exist[ed] and Montrell Austin [wa]s using this facility to traffic his narcotics" (Dkt. No. 98-2, ¶ 10).

Based on the information gathered from their investigation, law enforcement obtained a search warrant for 8501 Geyer Springs Road on November 9, 2024, which they executed that same day (Dkt. No. 98-1).  Detectives Schisler and Reppond had an operational meeting with the SWAT team once the search warrant was obtained.  Law enforcement had determined from social media surveillance that the doors were barricaded from the inside, so they decided on and executed a simultaneous explosive dynamic entry on both the north and south sides of the building.

The SWAT team entered the building simultaneously from both the north and south sides of the building and conducted an initial safety sweep, which consists of SWAT team members sweeping the interior of the building to identify and secure persons inside.  During this safety sweep, SWAT team members located a firearm in the attic space accessible only from the north side of the building.  Once accessed, the attic space runs the entire length of the building, covering both the north and south sides.

Upon entering the building, Detective Schisler noticed a wall that ran the length of the building and divided the north side of the building from the south side.  As a result of the wall, the north and south sides of the building were not accessible to each other without exiting the building.  However, Detective Schisler could not recall anything within the building identifying the separate halves of the building as separate suites or units.  The north side of the building appeared to be a vacant storage area with nothing of value.  The flooring on the north and south sides of the building was similar, and the exterior doors on both sides were barricaded from the inside in the same way

with makeshift or homemade barricades.  On the south side, officers found mail addressed to 8501 Geyer Springs Road; the mail did not distinguish between different suites at that address.

Inside the building, officers found a total of six guns, four ounces of fentanyl, and one ounce of heroin.  Of all the contraband found in the building, only the one firearm in the attic was found in an area accessible only from the north side.  Mr. Austin and Tyrik Slater, along with the rest of the contraband, were found in the south side of the building.  Detective Schisler spoke with Mr. Austin in the south side of the building at the time the warrant was executed.

One of the firearms obtained from the November 9, 2021, search of 8501 Geyer Springs Road was subsequently labeled as having been retrieved from "suite A" on the inventory sheet in the case file.  No other "suites" were identified in the case file.  Detective Schisler testified he did not know how that determination was made in preparing the inventory sheet.  Neither Detective Schisler nor Detective Reppond prepared the inventory sheet; another officer likely did.  Detective Schisler testified that he still believes 8501 Geyer Springs Road was a single unit despite the dividing wall.

## II.    Discussion

### A.    Fourth Amendment Standing

"Fourth Amendment rights are personal and may not be asserted vicariously."  *United States v. Green,* 275 F.3d 694, 698 (8th Cir. 2001).  As such, Fourth Amendment "standing" is "'useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search,' but it does not implicate Article III jurisdiction."  *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (quoting *Byrd v. United States*, 584 U.S. 395, 410 (2018)).

A defendant may demonstrate Fourth Amendment standing by showing a "legitimate expectation of privacy in the area searched or the item seized." *Id.* (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).  The defendant must have both a subjective expectation of privacy and also be able to show that this expectation is one that "society is prepared to recognize as objectively reasonable." *Green*, 275 F.3d at 699.  "There is no 'single metric or exhaustive list of considerations,' but a defendant's expectation of privacy must be grounded in property law or understandings that are recognized by society." *United States v. Juneau*, 73 F.4th 607, 613 (8th Cir. 2023) (quoting *Bettis*, 946 F.3d at 1027).

That said, it bears emphasizing that "[t]he defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015) (quoting *Alderman v. United States*, 394 U.S. 165, 171–72 (1969)). "The defendant may not rely on 'positions the government has taken in the case' but must 'present evidence of his standing, or at least . . . point to specific evidence in the record which the government presented [that] established his standing.'" *Id.* (alterations in original) (quoting *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995)).

In this case, Mr. Austin challenges the validity of the November 9, 2021, search warrant for 8501 Geyer Springs Road, but Mr. Austin has not cited to any record evidence indicating that he had any legitimate expectation of privacy as to the premises.  Mr. Austin likewise makes no argument as to Fourth Amendment standing in his written motion.  Although the Government did not raise the issue of standing in its briefing, it offered oral argument that Mr. Austin has failed to carry his burden to demonstrate Fourth Amendment standing after the Court raised the issue at the June 11, 2025, hearing.  Counsel for Mr. Austin offered oral argument that "collateral estoppel" prevented the Government from challenging Mr. Austin's Fourth Amendment standing, since the

Government takes the position in this prosecution that Mr. Austin was in control of the entire premises at 8501 Geyer Springs Road. In the same vein, counsel for Mr. Austin argued that Mr. Austin has standing "by default" or "automatic standing" because of the Government's position.

Mr. Austin's position is without merit. The law is clear that the burden lies with the defendant seeking to suppress evidence to establish Fourth Amendment standing; the defendant cannot simply rely on the Government's position. *See Maxwell*, 778 F.3d at 732. Although the Eighth Circuit has found that, in certain circumstances, the Government may waive its right to challenge Fourth Amendment standing on appeal by taking an inconsistent position before the district court, *see United States v. Morales*, 737 F.2d 761, 764 (8th Cir. 1984), such an issue is not before this Court.[1] Before this Court, Mr. Austin has the burden to point to evidence showing that he had a legitimate expectation of privacy in the property located at 8501 Geyer Springs Road, and he made no effort to carry this burden in either the briefing or at the hearing on the instant motion.

For these reasons, the Court finds that Mr. Austin has failed to establish that he had a legitimate expectation of privacy in the property located at 8501 Geyer Springs Road. The Court therefore denies Mr. Austin's motion to suppress for lack of Fourth Amendment standing (Dkt. No. 94). However, this Court is mindful that Fourth Amendment standing need not be addressed before addressing other aspects of the merits of a suppression motion. *Juneau*, 73 F.4th at 614. Therefore, even assuming that Mr. Austin has Fourth Amendment standing to challenge the search, the Court concludes, in the alternative and for the reasons set forth in this Order, that both the

---

[1] In any case, the Court notes it is well established that "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." *United States v. Salvucci*, 448 U.S. 83, 90 (1980). For instance, "[n]o matter the degree of possession and control, [a] car thief would not have a reasonable expectation of privacy in a stolen car." *Byrd*, 584 U.S. at 409.

search warrant and the search undertaken by law enforcement pursuant to the warrant were valid under the Fourth Amendment.

### B.    Fourth Amendment Analysis

#### 1.    Legal Standard

"The exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *United States v. Reed*, 978 F.3d 538, 541 (8th Cir. 2020) (quoting *Davis v. United States*, 564 U.S. 229, 232 (2011)). "The rule applies to deter future unlawful police conduct." *Id.* It is best understood as a judicially created supplement to the text of the Fourth Amendment, which is silent as to its enforcement. *Davis*, 564 U.S. at 231.

The Fourth Amendment itself provides that the "right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, "[t]o be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Salamasina*, 615 F.3d 925, 931 (8th Cir. 2010) (quoting *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007), *cert. denied*, 552 U.S. 1104 (2008)).

"Whether probable cause exists depends upon the totality of the circumstances, but it requires a showing of facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *Id.* (quoting *United States v. Gabrio*, 295 F.3d 880, 882–83 (8th Cir. 2002)). "Judges 'may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.'" *Id.* (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)).

In addition to probable cause, the Fourth Amendment's particularity requirement means that "[t]he authority to search granted by any warrant is 'limited to the specific places described in it and does not extend to additional or different places.'" *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002) (quoting *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir. 1983)). This "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). However, this "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022) (quoting *United States v. Maccani*, 49 F.4th 1126, 1131 (8th Cir. 2022)). In determining whether a warrant is sufficiently particular, courts consider "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (quoting *id.*). In determining whether particularity is satisfied, the issuing court may also consider an affidavit "if it is attached to the warrant." *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023).

In the context of a search warrant for a particular address, the Eighth Circuit Court of Appeals has stated:

> The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

*United States v. Gill*, 623 F.2d 540, 543 (8th Cir.), *cert. denied*, 449 U.S. 873 (1980) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)); *see also United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001) (quoting *Gitcho*, 601 F.2d at 371). Consequently, "[f]ederal courts long have held that police officers, before they constitutionally may search a separate residential unit within an apartment building, must have probable cause to do so that is specifically related to

that unit." *Gill*, 623 F.2d at 544 (quoting *United States v. Dorsey*, 591 F.2d 922, 928 (D.C. Cir. 1978)).  This has been referred to as a "single residence specificity" requirement.  *Id.*; *see also*, *e.g.*, *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) ("We have consistently held that probable cause to search one apartment in a multi-unit building does not support a warrant authorizing a search of the entire building.").  However, importantly in this regard, "a warrant need not be more specific than knowledge allows."  *Ivey*, 91 F.4th at 918 (quoting *United States v. Bishop*, 910 F.3d 335, 337–38 (7th Cir. 2018)).

### 2.    Analysis

In his motion to suppress, Mr. Austin argues that the warrant authorizing law enforcement to search 8501 Geyer Springs Road was invalid because it failed to meet the Fourth Amendment's particularity requirement (Dkt. No. 94, at 2–3).  Specifically, Mr. Austin maintains that 8501 Geyer Springs Road was divided into two separate units and that the warrant failed to specify which unit was to be searched or, relatedly, specify probable cause as to each of the units (*Id.*).  He further argues that this failure to specify the applicable unit(s) to which the warrant applied rendered the warrant facially defective such that law enforcement could not have relied on it in good faith (*Id.*, at 3–4).  At the Court's June 11, 2025, hearing, counsel for Mr. Austin offered further oral argument that, once law enforcement arrived at the premises to execute the search warrant and discovered that 8501 Geyer Springs Road was a multi-unit property, they should have ceased the search and obtained new warrants for the individual units.

In support of these contentions, Mr. Austin cites to *United States v. Voustianiouk*, 685 F.3d 206 (2d Cir. 2012), and *United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955).  In *Voustianiouk*, law enforcement sought and obtained a search warrant for "the premises known and described as 2424 Cambreleng Avenue Apt. 1, Bronx, New York 10458."  685 F.3d at 209.  The supporting

affidavit identified the place to be searched as "a ground floor apartment inside a two-story white shingled house." *Id.* Mr. Voustianiouk, the target of law enforcement's investigation, was not mentioned by name in either the warrant or any of the supporting documentation. *Id.* When law enforcement subsequently went to execute the search warrant, they realized that Mr. Voustianiouk was actually living in an apartment on the second floor and, despite the language of the warrant, searched Mr. Voustianiouk's second floor apartment instead. *Id.* at 209–10. The Second Circuit Court of Appeals thus found law enforcement's search of the second floor apartment to be violative of the Fourth Amendment as clearly outside the area authorized to be searched by the warrant. *Id.* at 215.

In *Hinton*, the search warrant in question was supported by an affidavit of one Jane Wilson attesting that she had seen heroin being sold on the previous day at 6423 Champlain Avenue in Chicago by four different people. 219 F.2d at 325. 6423 Champlain Avenue was a multi-unit apartment building, but the affidavit did not specify which apartment or apartments the alleged sales were made at and did not even allege that the sales were made in apartments occupied by any of the alleged sellers. *Id.* On this basis, the Government Commissioner issued a warrant commanding the search of the "entire building, 'basement and three floors.'" *Id.* The Seventh Circuit Court of Appeals accordingly found that the search warrant was facially defective because the "affidavit does not establish probable cause to search the entire building without the allegation of facts to show that each of the apartments in the building was the residence of at least one of the persons alleged in the affidavit to have been seen selling narcotics." *Id.*

Neither of these cases is availing to Mr. Austin. First, unlike in *Vouistianiouk*, where law enforcement conducted a search of a different apartment unit than the one specified in the search warrant, here the November 9, 2021, search warrant commanded a search of "[t]he facility,

curtilage, vehicles, occupants, and Montrell Austin, located at 8501 Geyer Springs Road, Pulaski County, Arkansas" (Dkt. No. 98-1).  Because the November 9, 2021, search warrant plainly commanded that the entire premises at 8501 Geyer Springs Road be searched, the Court finds that law enforcement's search did not exceed the authority conferred by the warrant.  *Vouistianiouk* is thus inapplicable.

Second, *Hinton* is distinguishable because the evidence on the record does not support Mr. Austin's contention that 8501 Geyer Springs Road was a multi-unit property.  Even if the presence of an abandoned sign for a tax services business and the number of doors on the building suggested that 8501 Geyer Springs Road may at one point have functioned as a multi-unit development, there was nothing in law enforcement's surveillance of the property or city records indicating that it was currently anything other than a single property.  Law enforcement observed individuals entering and exiting 8501 Geyer Springs Road from only one point of entry, not multiple points.  Further, nothing from the exterior of the building indicated to law enforcement or the public that it was functioning as anything other than a single property.

Indeed, even after law enforcement executed the search warrant, the evidence still indicated that 8501 Geyer Springs Road was a single property.   Although the dividing wall suggested that the property may at one point have been functionally divided, the following circumstances suggested that it was presently a single facility:  (1) the mail addressed to 8501 Geyer Springs Road did not distinguish between suites or units; (2) the doors to both units were fortified in the same manner; (3) the flooring on both sides was similar; (4) an integrated series of security cameras surveilling the entire premises was connected to a television monitor inside the building; and (5) the north side of the property appeared to be abandoned and functioning as a storage area for the activity on the south side.  As such, law enforcement reasonably believed that 8501 Geyer Springs

Road was a single property at all times relevant to the search on November 9, 2021. *Hinton*, which concerned a search warrant for a property that was plainly a multi-unit apartment building, is thus distinguishable on its facts.

The Court therefore finds:  (1) the November 9, 2021, search warrant was sufficiently particular for constitutional purposes; (2) the warrant was adequately supported by probable cause;[2] and (3) law enforcement's November 9, 2021, search of 8501 Geyer Springs Road did not exceed the authority conferred by the warrant.

### 3.    Conclusion On Fourth Amendment

For these reasons, the Court finds in the alternative that, even if Mr. Austin were to establish Fourth Amendment standing to challenge the November 9, 2021, search of 8501 Geyer Springs Road, the November 9, 2021, search warrant was constitutionally valid under the Fourth Amendment, and the search conducted by law enforcement of 8501 Geyer Springs Road on November 9, 2021, did not exceed the scope of the authority conferred by the warrant.[3]

## III.    Conclusion

For the foregoing reasons, the Court denies Mr. Austin's motion to suppress (Dkt. No. 94).

---

[2]  At the hearing on the motion to suppress, counsel for Mr. Austin stated that Mr. Austin does not dispute that the underlying facts relied upon by law enforcement and supporting the search warrant were sufficient to establish probable cause.  The Court therefore understands Mr. Austin to contest only whether the warrant was sufficiently particular and whether the officers conducting the search, upon realizing that 8501 Geyer Springs Road was divided into multiple units, should have obtained a new warrant based upon this information.  Even if Mr. Austin means to dispute the existence of probable cause as to either or both halves of the property at 8501 Geyer Springs Road, the Court finds on the record before it that the warrant was supported by sufficient probable cause to justify a search of the entire property.

[3]  For the same reasons, the Court also finds in the alternative that, even if the search warrant was invalid, law enforcement reasonably and in good faith believed that the warrant was valid under the circumstances.  The search was thus valid under the good faith exception to the exclusionary rule.  *See, e.g.*, *United States v. Williams*, 976 F.3d 807, 809 (8th Cir. 2020).

It is so ordered this 17th day of June, 2025.

Kristine G. Baker
Chief United States District Judge